

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
:
RENE MORALES,                                                : MEMORANDUM & ORDER
                                                             :
                              Plaintiff,                     : 15-CV-6734 (ENV)
                                                             :
          -against-                                          :
                                                             :
                                                             :
COMMISSIONER OF SOCIAL SECURITY,                             :
                                                             :
                              Defendant.                     :
                                                             :
------------------------------------------------------------ X

Vitaliano, D.J.

Plaintiff Rene Morales requests review, pursuant to 42 U.S.C. §405(g), of a final decision by the Commissioner of Social Security (the "Commissioner") denying his claim for Disability Insurance Benefits ("DIB"), under the Social Security Act (the "Act"). The parties have cross-moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons stated below, plaintiff's motion is granted, the Commissioner's cross-motion is denied and this matter is remanded for further proceedings consistent with this opinion.

Procedural History

Morales applied for DIB on March 13, 2014. R. at 69. On August 20, 2014, the Social Security Administration ("SSA") determined that Morales was not disabled and denied his claim. R. at 68. On August 28, 2014, Morales requested a hearing before an Administrative Law Judge ("ALJ") which took place on January 30, 2015. R. at 82, 26. On May 29, 2015, the ALJ denied Morales's claim for DIB. R. at 10. The ALJ determined that Morales had the capacity to perform

1

medium work. R. at 21. Appeals Council review was denied on September 20, 2015. R. at 7-8. This action followed.

## Background

Morales was born on April 28, 1958. R. at 30. He received a G.E.D. in 1976. Morales lives in Queens with his wife. *Id.* He held a job as a resident manager for residential buildings from 1999 through September 2013. R. at 188. His job duties included oversight and assistance with plumbing and electrical work, as well as lifting up to 100 pounds. R. at 189-90. It is undisputed that Morales suffers from extensive physical and mental ailments including urinary tract infections, severe gout and mental illness including depression and panic attacks. R. at 33, 43-5, 48. The combination of medications he takes, in Morales's words, "put me down when I take [them]." R. at 44. He states that he is unable to stand for long periods of time and consistent with that limitation, he uses a cane. R. at 41. Morales claims that his disability began on September 1, 2013, and his disability benefits filing came a bit more than six months later on March 13, 2014. R. at 164.

I. Treatment History

The medical records demonstrating Morales's disabilities include documentation beginning in 1998 and continuing, principally, from 2012-2015. In 1998, Morales underwent an MRI brain scan that showed findings of a non-operable tumor, a finding which was confirmed by 2012 and 2014 scans. R. at 241-43, 330. Separately, he was examined by Dr. Antoine Abed, a pulmonologist, who reported that he was morbidly obese, had mild asthma, and required treatment for sleep apnea. R. at 236. Dr. Abed believed Morales had previously suffered from an episode of respiratory failure and ongoing acute respiratory distress syndrome, but later made a "remarkable recovery." *Id.* In September 2013, Morales sought treatment from his longtime

internist, Dr. Maria Santana, complaining of dysuria, foul smelling urine, loss of sleep, and snoring. R. at 283, 362. Dr. Santana diagnosed plaintiff with a urinary tract infection and prescribed antibiotics. R. at 283, 362. In the following months, Morales returned to Dr. Santana complaining of foul-smelling urine and infections, fatigue, gout attacks, anxiety, depression, headaches and lower back pain. R. at 286-88, 291, 344, 365-66.

In May 2014, Dr. Santana reported that she had treated Morales every two to three months beginning in 2007. R. 231-35. She diagnosed him with anxiety, hypertension, hyperlipidemia, sleep apnea, gout, recurrent urinary tract infections, and pituitary adenoma. *Id.* His symptoms included joint pain, dysuria, anxiety attacks, insomnia, and snoring. R. 231. Dr. Santana prescribed allopurinol, colchicine, Percocet, Klonopin, and Synthroid. R. at 232. She concluded that plaintiff was limited in his work capability by carpal tunnel syndrome, anxiety and panic attacks. R. at 234. She also noted in her findings that Morales was overweight, experienced shortness of breath when climbing stairs, and was limited in his ability to lift and carry. *Id.* Morales's medical issues continued in the summer and fall of 2014 when he returned to Dr. Santana complaining of recurring gout and low back pain and Dr. Santana recommended consultation with specialist physicians. R. 294, 339, 342. In this period she repeatedly prescribed colchichine and Percocet, and recommended diet and lifestyle changes. R. at 295, 324. Around the same time, Dr. Ruben Dybner, a urologist, treated plaintiff for a ureteral stricture and ordered tests which revealed a faulty liver and hepatic steatosis. R. at 264-7, 374. He was treated for severe urinary tract infections and pus drainage, including a prostate operation. R. at 376, 378.

In addition to his physical treatments, Morales was referred for psychiatric care to Dr. Luz Cervantes. R. at 273-74. He saw Dr. Cervantes monthly beginning in 2014, and reported panic attacks, depression, and suicidal ideations. *Id.* Dr. Cervantes found that plaintiff was at risk of

addiction to his anxiety medication, clonazepam. R. at 228. He prescribed Pristiq and Remeron and directed him to stop taking the clonazepam. *Id.* He also diagnosed dysthymia and an anxiety disorder. R. at 227. In April, May, June and July 2014, Morales reported panic attacks, anxiety and a painful gout attack. R. at 229, 274-75. In fall of 2014, he reported difficulty getting out of bed, bad moods and difficulty coping with stress worsened by his unemployment. Dr. Cervantes found plaintiff was having difficulty with his activities of daily living and changed Morales's medications to venlafaxine and Buspar. R. at 276-78.

II. SSA Findings

In compliance with the SSA review process, Morales was examined by a psychologist and a medical doctor. Morales reported to a psychologist, Dr. Toula Georgiou, that he had been hospitalized in 2010 for bladder and urinary tract infections, and, in 2012, for pneumonia. R. at 251-54. Other medical issues he reported included a brain tumor, back problems, gout, asthma, thyroid problems, sleep apnea, and high blood pressure. *Id.* Morales also complained of depression, difficulty falling and staying asleep, decreased appetite, dysphoria, loss of interest, loss of pleasure, concentration difficulties, fatigue, and thoughts of suicide. *Id.* Morales reported severe panic attacks two to three times a month along with sweatiness, dizziness, and breathing difficulties.[1] *Id.* Dr. Georgiou observed that his patient used a cane to walk. R. at 252. He observed, additionally, that Morales's concentration was impaired and his memory was slightly impaired, but he was able to do simple calculations. R. at 252-53. It was noted that though Morales was capable of bathing, dressing, and grooming himself on his own, but his physical problems prevented him from cooking and cleaning. R. at 253. Dr. Georgiou diagnosed Morales with a

---

[1] The roll call of Morales's medications included allopurinol, clonazepam, quinapril, proair, Pristiq, levothyroxine, indomethacin, testosterone, buspirone, Percocet, and cabergoline. R. at 252.

4

panic disorder and depressive disorder. R. at 253-54. Dr. Georgiou's report indicated that Morales could have difficulty maintaining a regular schedule and dealing with stress. R. at 253.

Plaintiff was also examined by internist Dr. John Joseph on June 3, 2014. R. at 256. At this examination, he presented with complaints of a herniated disc in his lumbar spine, daily back pain, a non-operable brain tumor, gout, urinary tract infections and prior treatment for respiratory failure.[2] *Id.* Morales walked with a cane, could walk on heels and toes without difficulty, fully squat, rise from chairs without help, and perform lumbar spine flexion to 60 degrees. R. at 257-8. Dr. Joseph diagnosed him with low back pain, a history of herniated discs, hypertension, bronchial asthma, history of pituitary tumor, gout, chronic urinary tract infections, anxiety, depression, and sleep apnea. R. at 259. Dr. Joseph opined that Morales was restricted from heavy lifting and carrying because of his herniated disc, and that he should avoid dust, smoke, and other respiratory irritants due to his history of asthma. *Id.*

## Standard of Review

Section 405(g) of the Act empowers district courts to review a disability decision of the Commissioner and affirm, reverse or modify it "with or without remanding . . . for a rehearing." 42 U.S.C. § 405(g); *see Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004). But, when evaluating a determination by the Commissioner to deny a claimant disability benefits, a reviewing court may reverse the decision only if it is based upon legal error or if the factual findings are not supported by substantial evidence. *Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87, 91 (2d Cir. 2019) (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla. It means such relevant

---

[2] Dr. Joseph noted that Morales's medications included quetiapine, levothyroxine, Pristiq, indomethacin, testosterone, cabergoline, Busperione, Percocet, allopurinol, clonazepam, quinapril, and ProAir. R. at 257.

5

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (internal citation omitted).

Case law also cautions courts to "keep[] in mind that it is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998); *see also Watson v. Berryhill*, 732 F. App'x 48, 51 (2d Cir. 2018) (summary order). When evaluating the evidence, "[t]he court may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991); *see also Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (ALJ's medical conclusion "overlooked the facts in the record and, more egregiously, constituted an improper substitution by the ALJ of her own lay opinion in place of medical testimony"). Nonetheless, if "there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have [his] disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

## Discussion

I. <u>Entitlement to Benefits</u>

A "disability" justifying DIB or SSI benefits exists if the claimant demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Commissioner has adopted a five-step sequential evaluation for adjudication of disability claims, set forth at 20 C.F.R. § 404.1520. The Second Circuit describes the process as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider his disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam)). Although the claimant bears the burden of proof as to the first four steps, the burden shifts to the Commissioner at the fifth step. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

In applying the five-step process, an ALJ must consider "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability

testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)); *see also Cammy v. Colvin*, No. 12-CV-5810 (KAM), 2015 WL 6029187, at *10 (E.D.N.Y. Oct. 15, 2015). Where the information in the record is inconsistent, the Commissioner can weigh the relevant evidence to determine whether the claimant is disabled. 20 C.F.R. § 404.1520b(b). The ALJ need not address every conflict in the record, but "the crucial factors in any determination must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

## II. The ALJ's Opinion

There is no question that, procedurally, the ALJ followed the prescribed five-step format in analyzing Morales's claims. At step one, she found that plaintiff has not engaged in substantial gainful activity since the alleged disability onset date of September 1, 2013. R. at 15. At step two, the ALJ found that Morales has severe impairments satisfying the *de minimis* standard of severity and causing more than minimal functional limitations to do basic work-related activities. R. at 15. However, at step three, she found his impairments did not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix, specifically, Sections 3.00, 5.00, 6.00, 9.00, 11.00 and SSR-02-1p. R. at 16. The ALJ concluded, as a result, that no impairment singly or in combination was severe enough to cause a "marked" limitation. R. at 16, 17. The ALJ did not consider Morales's gout at this stage. *Id.*

Completing her analysis on this case, the ALJ found that Morales has the residual functional capacity to perform less than a full range of medium work yet determined he could lift and carry up to 50 pounds occasionally and 25 pounds frequently. R. at 17. 20. In reaching this

determination, the ALJ focused on lack of evidence of back pain to illustrate Morales's ability to perform a range of medium work. R. at 19. Then, at step four, the ALJ found Morales unable to perform his past relevant work based on his physical and mental limitations. R. at 13, 20. Nonetheless, at step five, relying on vocational expert Andrew Pasternak's testimony, the ALJ found that Morales could perform jobs that exist in sufficient numbers in the national economy such as "hand packager," "warehouse worker," and "landscape specialist." R. at 21.

III. The Treating Physician's Rule

The treating physician rule mandates that, in reaching her final disability determination, an ALJ must give "controlling weight" to the opinion of the claimant's treating physician or psychiatrist as to the nature and severity of the patient's physical and/or mental impairments if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Although the ultimate determination of disability is left to the ALJ it is clear that "a statement by a treating source that a claimant is disabled should not be disregarded," *Arruda v. Comm'r of Soc. Sec.*, 363 F. App'x 93, 96 (2d Cir. 2010) (citation omitted). When an ALJ does not give the treating source's opinion controlling weight, the ALJ "must explicitly [show her consideration of]," among other things, "(1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist" in determining the proper weight to give the opinion. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Schisler v. Sullivan*, 3 F.3d 563, 567-68 (2d Cir. 1993). The determination by the ALJ that Morales does not qualify for DIB

cannot survive without a clear expression of reasoning as to why the opinion of Morales's treating medical professionals should be discounted. No such explanation is present in the ALJ's decision.

At the top of the error list here is the ALJ's disregard of Dr. Santana's opinion in her final disability determination. The ALJ relied on some of Dr. Santana's findings, such as plaintiff's ability to sit, stand, and walk, but discounted other findings which would favor a disability determation as "imprecise." R. at 18. This was error. "Even under the current amended regulations, which give an ALJ more discretion to 'determine the best way to resolve the inconsistency or insufficiency' based on the facts of the case, the first option is still to recontact the treating physician." *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d. 496, 505 (S.D.N.Y. 2014).

In the ultimate disposition, despite the ALJ's claim that she placed great weight on the treating physicians' opinions, she discounted their opinions where they supported a finding of disability. R. at 16-17. Failure to properly apply the treating physician rule, like not applying it at all, constitutes an error of law. Where a district court, as here, finds a "...reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). There is such a "reasonable basis for doubt" in this case. *Id.* The ALJ failed to consider, in any consistent fashion, the evidence from Dr. Santana related to Morales's gout. The ALJ also violated the treating physician rule at step four by not considering Dr. Cervantes's findings. As a result of her cherry picking, the ALJ did not give full consideration to two categories that would demonstrate "marked" limitations, and support a finding of disability, under Sections 11.00 and 14.00 and failed to explain her reasoning as to why.

10

The error list does not stop there. Next on it, the ALJ erred in determining Morales's residual functional capacity by failing to give appropriate weight to Morale's gout in her evaluation, in the face of repeated findings that he suffered from gout attacks and his own testimony that gout caused him to leave his previous employment. R. at 17. Although gout is one of the main symptoms in Morales's claim of disability, the ALJ's only note was that gout symptoms presented a *de minimis* standard of severity not rising to a sufficient level to cause limitation. R. at 15. In testament to the inadequacy of this determination, the ALJ weakly points to Dr. Santana's notes and claimed that they documented no longitudinal treatment for significant symptoms suggesting incapacity for a full range of medium work. At the same time, importantly, there is no discussion of how Morales's gout would affect his ability to perform a full range of medium work. R. at 19. But, notwithstanding the gap in the findings, the ALJ determined that Morales had the residual functional capacity to perform less than a full range of medium work. In short, not rationalizing it with her finding that Morales could not perform a full range of medium work, she went on to reach the conclusion, without medical evidence that Morales could carry 25 pounds regularly and 50 pounds occasionally. This determination was made, moreover, without rebutting Dr. Santana's records showing that Morales was consistently prescribed medications for his lower back pain, and gout attacks. R. at 286, 288, 291, 294-96. At any rate, the ALJ's determination at step four finding Morales not disabled fails to consider gout, and therefore, the conclusion reached in step five of not disabled fails to consider all relevant factors. R. at 16-17.

## Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is granted and the Commissioner's cross-motion is denied, the final order of the Commissioner is reversed, the decision of the ALJ is vacated, and the matter is remanded for further proceedings consistent with

this Order. The Clerk of Court is directed to enter judgment accordingly and to close this case for administrative purposes.

So Ordered.

Dated: Brooklyn, New York
January 17, 2020

s/ Eric N. Vitaliano
_____
ERIC N. VITALIANO
United States District Judge